USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/22/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
ANGLO-IBERIA UNDERWRITING
MANAGEMENT COMPANY, ET AL.,

       Plaintiffs,

   -against-                   Civil Action No. 97-0084
                                  (DCP)
LODDERHOSE, ET AL.,

       Defendants.
-------------------------------------x

[Defendant's renewed motion to dismiss granted.]

Decided: January 22, 2008

Waesche, Sheinbaum, & O'Regan, P.C. (John R. Keough, III, Cody. D. Constable) for Plaintiffs.

White & Case LLP, (Carolyn B. Lamm, Frank Panopoulos, Claire DeLelle) For Sovereign Defendants Republic of Indonesia and PT Jamsostek (Persero).

**OPINION**

POGUE, Judge[1]: This matter is before the court after remand by the Court of Appeals. The appellate court's remand order directed that we consider whether the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-11[2], provides jurisdiction over Plaintiffs' negligent supervision claim against Defendant Jamsostek, the administering agency for Indonesia's

---

[1]Judge Donald C. Pogue of the United States Court of International Trade, sitting by designation.

[2]All references are to the 2000 edition of the United States Code.

social security program. As explained below, the nature of Jamsostek's activity, insofar as it is at issue in this case, is non-commercial. Plaintiffs' negligent supervision claim therefore is not within the court's jurisdiction.

## Background

Plaintiffs' claims in this matter arise from an international reinsurance fraud scam perpetrated by a group of individuals that included Defendant Mr. Prio Adhi Sartono ("Sartono"). Mr. Sartono is a former employee of Defendant P.T. Jamsostek ("Jamsostek"), the Indonesian state-owned social security insurer.³ During the time of the scam, Mr. Sartono had been sponsored by Jamsostek to pursue studies, in the United States, leading to an MBA. The district court determined that Mr. Sartono "did not have any employment responsibilities" while he was in the United States, Ango-Iberia et al. v. PT Jamsostek et al.,1998 WL 289711 at *1 (S.D.N.Y. June 04, 1998) (NO. 97 CIV. 5116 (Baer, J.)) (hereinafter "Ango-Iberia I"). It is undisputed, however, that many of the fraudulent business dealings that were part of the scam were conducted in the United States during the year of Mr. Sartono's participation in the Jamsostek-sponsored educational program.⁴ Nonetheless, because

---

³ Jamsostek fired Mr. Sartono in July, 1997, after the scam was revealed.

⁴ Jamsostek does claim that none of these activities are
(continued...)

2

it found that Sartono had no actual or apparent authority to enter into the fraudulent reinsurance agreements. In a second opinion, the district court dismissed Plaintiffs' claims against Jamsostek. Ango-Iberia et al. v. PT Jamsostek et al.,1999 WL 76909 at *5 (S.D.N.Y. Feb. 16, 1999) (NO. 97 CIV. 5116 (Baer, J.)) (hereinafter "Ango-Iberia II").

The Court of Appeals affirmed the district court's dismissal of Plaintiffs' first, second, and third causes of action, which were breach of contract claims against the Defendants. As noted above, these claims were based on assertions of actual and apparent authority to enter into the fraudulent reinsurance agreements--authority which the district court found to be lacking. Anglo-Iberia et al. v. Lodderhose et al., 2007 WL 1533120 (2nd Cir. 2007), at *4 (hereinafter "Anglo-Iberia III").

Also, the appellate court noted that "Plaintiff-Appellants have, to date, prevailed in district court in their claims against Sartono and his accomplices in their individual capacities. See Anglo-Iberia et al. v. Lodderhose et al., 282 F. Supp. 2d 126 (S.D.N.Y. Sept. 12, 2003)(Marrero, J.); Anglo-Iberia et al. v. Lodderhose et al., 287 F. Supp. 2d 454 (S.D.N.Y. Oct. 16, 2003 (Marrero, J.)." Anglo-Iberia III, n.2.

The Court of Appeals, however, left Plaintiffs' fourth

---

⁴(...continued)
attributable to it.

cause of action, their negligent supervision claim, for our consideration. Briefly summarized, Plaintiffs' negligent supervision claim alleges that Jamsostek's negligent supervision of its present and former employees, including Sartono, in the course of Jamsostek's commercial activities in Indonesia, directly effected the potential for the fraudulent scheme in the U.S. Ango-Iberia III, at n.7. Accordingly, Plaintiffs' argue, that their negligent supervision claim lies within the court's FSIA jurisdiction.

The FSIA provides that, subject to specified exceptions, "a foreign state shall be immune from the jurisdiction of the courts of the United States." 28 U.S.C. § 1604. A "foreign state" includes "an agency or instrumentality" thereof. 28 U.S.C. § 1603(a). No party claims that Jamsostek is not, at the least, an agency or instrumentality of Indonesia. Jamsostek therefore is immune from liability unless one of the several exceptions to § 1604 applies.

Plaintiffs contend that subject matter jurisdiction over their negligent supervision claim is conferred by FSIA's "commercial activity" exception as specified by 28 U.S.C. § 1605(a)(2).[5] FSIA defines "commercial activity" as "either a

---

[5] 28 U.S.C. § 1605(a)(2) provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States...in any case...in which the action is based upon a commercial activity carried on in the United States by the
(continued...)

4

regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d).

Without deciding the matter, the appellate court noted that Plaintiffs' negligent supervision claim "arguably comes within the language of the third clause of 28 U.S.C. § 1605(a)(2), which renders sovereign immunity unavailable in any case 'in which the action is based...upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.'"[6] Anglo-Iberia III, at *4.

---

[5](...continued)
foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

[6] On remand, Plaintiffs attempt to resurrect arguments, under the first two clauses of 28 U.S.C. § 1605(a)(2), that their negligent supervision claim is based on either Jamsostek's commercial activity in the United States or on an act performed in the United States in connection with commercial activity elsewhere.
First, Plaintiffs argue that, in the United States, Jamsostek employees solicited and entered into contracts that were the basis of the reinsurance scheme, and otherwise engaged in activities in pursuit of that scheme. The district court has already determined, however, and the Court of Appeals has affirmed, that these activities by Sartono and his accomplices
(continued...)

## Discussion

As the Supreme Court has explained, "[w]e begin our analysis by identifying the particular conduct on which the [Plaintiff's]

---

[6](...continued)
were without real or apparent authority. They are not, therefore, Jamsostek's commercial activity, but are rather the commercial activity of others; these acts, therefore, cannot constitute Jamsostek's commercial activity in the United States.
    In the alternative, Plaintiffs argue that Jamsostek's funding of Sartono's participation in a U.S.-based education program constitutes commercial activity in the United States. As noted above, the FSIA directs that we determine the commercial character of an activity by reference to its "nature." See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992). ("[T]he question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" (citations omitted)).
    Jamsostek's training of its staff is certainly one type of activity by which private parties trade and traffic in commerce. Jamsostek's support of Sartono in a U.S.-based MBA program, however, is incidental to his employment in insurance activities, and it is that employment upon which any claim for negligent supervision must be based. (It is not, after all, Sartono's teachers in the U.S. who are being charged with negligent supervision.)
    As it is incidental to Sartono's employment, Jamsostek's support of Sartono's U.S. placement does not provide a sufficient connection to that employment so as to render Plaintiffs' negligent supervision claim "based upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." As the Supreme Court has noted, there is a "difference between a suit 'based upon' commercial activity and one 'based upon' acts performed 'in connection with' such activity. The only reasonable reading of the former term calls for something more than a mere connection with, or relation to, commercial activity." Saudi Arabia v. Nelson, 507 U.S. 349, 358 (1993). Here, Plaintiffs' claim is based upon Jamsostek's alleged negligent supervision of Sartono's employment; that claim has, at best, a "mere connection" with Sartono's education program.

action is 'based' for purposes of the act." Nelson at 359-7 ("the phrase ['based upon'] is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case."); see also Garb et al. v. Republic of Poland et al., 440 F. 3d 579 (2d Cir. 2006) (Subsequent commercial transactions do not give rise to subject matter jurisdiction over claims arising from original governmental expropriation.)

As noted above, Plaintiffs argue that Jamsostek's negligent supervision of its employees in connection with their employment in Indonesia caused a direct effect in the United States, i.e., the failure to prevent Sartono's scheme. Plaintiffs' action is therefore 'based' on Defendants' supervision of Sartono's employment.

Jamsostek's employment of Sartono, and others who assisted him, may be, depending on the nature of that employment, the "type of actions by which a private party engages in 'trade and traffic or commerce.'" Weltover at 614. Also, albeit in a different context, our appellate court has previously indicated that the "employment or engagement of...staff" may be the type of activity that would ordinarily be considered commercial. DeLetlier v. Republic of Chile, 748 F. 2d 790, 796 (2d Cir. 1984), cert. denied, 471 U.S. 1125 (1985) (Chilean National Airlines assets not subject to execution under 28 U.S.C. §

1610(a)(2)[7] to satisfy judgment against Chile for tortious, non-commercial activity.) (citing legislative history to that effect).[8]

Defendants respond that Jamsostek's alleged negligent supervision is not an act but is rather an omission, and that, therefore, no jurisdiction may lie. Defendants compare the third clause of 28 U.S.C. § 1605(a)(2), which requires that the action be based on "an act", with the "tortious activity" exclusion, 28 U.S.C. § 1605(a)(5), which permits suits for "damages... caused by the tortious act or omission."[9] To Defendants, the difference

---

[7] In relevant part, Section 1610(a)(2) provides that "[t]he property in the United States of a foreign state ... used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution ... if ... the property is or was used for the commercial activity upon which the claim is based...."

[8] As noted above, because the statute makes it clear that the motive for the activity is not determinative of its commercial nature, see Weltover at 614, Nelson at 360, we need not be distracted by the presence or absence of a profit motive. Cf. DeLetlier at 797 with Cicippio v. Islamic Republic of Iran, 30 F.3d 164, 167 (D.C.Cir. 1994)

[9] 28 U.S.C. § 1605(a)(5) provides that a foreign state shall not be immune from suit:

> "in any case-... (5) not otherwise encompassed in paragraph (2) above [the "commercial activity" exception], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not
> (continued...)

in language indicates a Congressional intent to exclude "omissions" from the scope of the commercial activity exception.

Plaintiffs disagree, relying on <u>Aldy et al. v. Valmet Paper Machinery et al.</u>, 74 F. 3d 72, 76 (5 Cir. 1996)("To the contrary, an omission is an act."), holding that claims of negligent product design and/or manufacture fall within the "commercial activities" exception to immunity.

Plaintiffs' argument has weight for two reasons. First, the operative statutory phrases are not so parallel as to imply a relationship between them that would indicate the clear Congressional intent that Defendants would divine. The third clause of the "commercial activity" exception applies to an "action based upon...an act...", whereas the operative clause of the "tortious activity" exception refers to "damages... caused by the tortious act or omission." The differences between the operative phrases are significantly greater than the mere addition of "omission" to the latter. Their construction is not parallel, and the former speaks to actions, the latter to

---

[9](...continued)
apply to--
(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights..."

9

damages. We will not therefore infer the clear signal of a Congressional intent that Defendants discern from the differences in language. See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) ("[imputing specific language] when it is clear that Congress knew how to specify [that specific language] when it wanted to, runs afoul of the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (citing 2A N. Singer, Statute and Statutory Construction § 46:06 p. 194 (6th ed. 2000)("effect must be given, if possible, to every word, clause and sentence of a statute.").

Second, the introductory language of the "tortious activity" exception ("[in any case] not otherwise encompassed in paragraph (2) above...") makes it clear that the two subsections are mutually exclusive. Our appellate court has so decided. DeLetlier at 795. Therefore, we cannot conclude that it is appropriate to import the limitations contained in the "tortious activity" exception into the "commercial activity" exception.

This analysis also precludes acceptance of Defendants' argument that Plaintiffs are foreclosed from bringing their claim by the two exceptions to the "tortious activity" exception of 28 U.S.C. § 1605(a)(5). Defendants argue that the two exceptions to the tortious activity exception, subparagraphs (A) and (B), supra

10

n. 7, also apply to the commercial activity exception, such that they render the court without jurisdiction over a claim based on Jamsostek's "discretionary" function, negligent supervision, or for a claim arising out of Sartono's misrepresentation or deceit. Plaintiffs respond that the "commercial activities" exception explicitly contains no similar "exceptions to the exception," so that it would be inconsistent with the statutory language to read the exceptions to subsection (5) as also applicable to subsection (2).

While there is authority on both sides of this issue, cf. Bryks v. Canadian Broadcasting Corp. et al., 906 F. Supp. 204 (S.D.N.Y. 1995) (finding it anomalous to permit defamation claims under the commercial activity exception), and cases cited therein, with WMW Machinery, Inc. et al. v. Werkzeugmaschinenhandel GMBH im Aufbau, et al., 960 F. Supp. 734 (S.D.N.Y. 1997) (finding jurisdiction over claim of tortious interference with contractual relations and finding the "commercial activity" exception and the "tortious act" exception mutually exclusive), and cases cited therein, the weight of authority, notably including DeLetlier (even though not directly addressing whether the exceptions in 1605(a)(5)(A) and (B) restrict 1605(A)(2)), recognizes that the two exceptions are mutually exclusive.

Defendants also argue that, in its earlier decisions in this

11

case, the district court has already determined that Jamsostek's "sole purpose is to 'implement and administer the Indonesian workers' social security system.'" Ango-Iberia I at *3. Therefore, Defendants claim, Sartono's employment does not have the requisite connection to commercial activity. However, as explained above, the determination of whether an activity is commercial or non-commercial is made by referring to the act's nature, not its purpose. The fact that Jamsosteck has a non-commercial purpose is therefore not determinative. Rather, it is the commercial or non-commercial nature of Jamsosteck's activity itself which must be determined.

Defendants further assert that the provision of social security benefits is a "core sovereign function" that cannot be regarded as a commercial activity. Relying on Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1030 (D.C. Cir. 1997)(dismissing claims based on acts that were within the official duties of administrators of foreign government's medical program), Defendants argue that the regulation and administration of a government program that provides health, disability, death, and workman's compensation to its workers is "uniquely sovereign in nature." Plaintiffs assert, however, that Sartono's employment in Indonesia is a type of activity that would ordinarily be considered commercial.[10] Citing Rush-Presbyterian-

---

[10] We pause to note that mere employment in the conduct of
(continued...)

St. Luke's Med. Ctr. v. Hellenic Republic, 877 F.2d 574, 575 (7th Cir. 1989)(no immunity from suit over foreign government's contract with U.S. hospitals for payment for medical services), Plaintiffs contend that Jamsostek's employment of Sartono is like that of any private, commercial insurer.

The evidence in the record on this question establishes that Jamsostek employed "Sartono to process health claims and collect premiums." Pl.'s Supp. Mem. on Remand, p. 7. Jamsostek processed health claims and collected premiums in its capacity as the default health insurer, under Indonesia's national social security program,[11] which, as noted above, Jamsosteck operates and administers. The premiums collected were employer

---

[10](...continued)
non-commercial activities is not, without more, sufficient to establish a connection with commercial activities. When foreign states act, they will most often be doing so through people they "employ." Thus, if that mere employment, without more, were itself sufficient to create jurisdiction, the exception would be expanded to swallow the rule. However, because the third clause of the exception requires a connection with commercial activity, Sartono's employment, in and of itself, will not be sufficient unless that employment is commercial in character or has a sufficient connection with activity of a commercial nature. See Kato v. Ishihara, 360 f.3d 106, 114 (2 Cir. 2004) ("In determining whether a foreign government's employment of personnel in the United States is 'civil service,' and therefore 'governmental,' we do not look principally to whether that employment resembles the contemporary civil service of the American democracy, but we instead inquire whether 'the particular actions that the foreign state performs are the *type* of actions by which a private party engages in 'trade and traffic or commerce.''" citing Weltover at 614.)

[11] Jamsostek was the "default" insurer because an employer could opt out of its health insurance program by providing superior coverage to its employees.

contributions and payroll deductions. There is no allegation that Saronto's day-to-day responsibilities involved the kind of commercial activity, such as contracting with foreign doctors, or providing overseas coverage, that would render that employment "commercial" for the purposes of the FSIA. Cf. Rush-Presbyterian. The nature of Sartono's employment, insofar as it is at issue here, is therefore employment in the provision of a governmental program of health benefits through collection of employer contributions and payroll deductions; such employment is by nature non-commercial.

Plaintiffs further allege that, because employers may opt out of the insurance program that Jamsostek operates, the program is therefore "voluntary". Because the plan is "voluntary", Plaintiffs allege, Jamsostek is essentially like any other operator in the commercial insurance market, selling insurance to employers who may buy insurance from Jamsostek or from a commercial dealer. As such, Plaintiffs claim, Jamsostek, competes with other, private, commercial insurers, and, at least in its insurance business, should be treated as a commercial entity and not be granted immunity under FSIA.

Plaintiffs' argument here is unpersuasive. Jamsostek's insurance program is not in any relevant way "voluntary." All Indonesian employers with at least ten employees are required to take part by making payments into the program that funds basic

health insurance. While employers may opt out of the program by providing a higher degree of insurance to their employees, they may not decide to simply not take part in the program or to purchase a lesser amount of insurance. Rather, the program maintained by Jamsostek provides a general "floor" for health insurance for all workers in Indonesia. Jamsostek does not sell insurance to workers or to employers in any traditional sense. Rather, participation in the insurance program is not "voluntary" and not "commercial" because there is no alternative to providing the basic level of coverage provided by Jamsostek's program. In this role, Jamsostek is acting more as a "regulator of a market" than as a "private player." Weltover at 614. Therefore, we find that Jamsostek's activities do not fit into the "commercial activity" exception to FSIA.

To complete our analysis, we will also address the final element of the third clause of the commercial activity exception - that the act upon which Plaintiffs base their claim causes a "direct effect in the United States." Plaintiffs argue that there is a "substantive connection" or "causal link between Jamsosteck's negligent supervision of Sartono and the damage he caused in the United States. Specifically, as noted above, Plaintiffs argue that Jamsostek's negligent supervision caused a direct effect in the United States because, in the absence of such negligent supervision, the reinsurance fraud scam would not

have occurred.

Defendants respond that Sartono's activities did not "cause" the direct effect at issue here, i.e., the significant economic harm Plaintiffs suffered in the United States as a result of the scam, because there was an intervening cause-the fraudulent scam itself. As Plaintiffs point out, however, the existence of two causes does not preclude liability. While the effect required must be "direct", see, e.g., Garb at 587 ("Concededly, the expropriation of property from plaintiffs...is in some sense, "connected" to any subsequent commercial treatment of that property.... Such a connection, however, is simply too "attenuated," and not substantive enough, to satisfy § 1605(a)(2)."), it need not be exclusive. For an effect to be "direct" it must follow "as an immediate consequence of the defendant's...activity." Hanil Bank v. P.T. Bank Negara Indonesia (Persero)., 148 F.3d 127, 131 (2d Cir. 1998), (citation omitted). Jamsostek's allegedly negligent supervision meets this requirement because it had the consequence of failing to prevent Sartono's fraud. [12]

Nonetheless, because Sartono's employment was non-commercial in nature, the court does not have jurisdiction over Plaintiffs'

---

[12]However, for an effect to be direct it "need not be substantial or foreseeable." Id. This strongly implies that more than one cause may be "direct" in any particular case, so long as the effect in question follows in a clear way, as would seem to be the case here.

16

claim.[13]  Accordingly, it will be dismissed.  The parties are directed to consult and submit, no later than February 22, 2008, a draft judgment in accordance with this opinion.

SO ORDERED.

/s/ Donald C. Pogue
_____
Donald C. Pogue, Judge

Dated: January 22, 2008
       New York, N.Y.

---

[13] Because of this conclusion, we need not reach Jamsostek's argument that because it was not reasonably forseeable that Jamsostek's operations would have a substantial effect in New York, the extraterritorial application of New York's negligent supervision law to Jamsostek's actions would be unconstitutional. We note however that Defendant's argument would require the court to deviate from the basic rule that the locus is determined by the place of injury. Shultz v. Boy Scouts of America, Inc., 491 N.Y.S. 2d 90, 94 (1985).

17